OAK CLIFF STATE BANK & TRUST CO. et al. v. CONROY et al. (No. 7877.)

(Court of Civil Appeals of Texas. Dallas. Feb. 2, 1918. Rehearing Denied March 9, 1918.)

1. MORTGAGES ⬅⟿581(3)—FORECLOSURE—ATTORNEY'S FEES.

If mortgage notes are delivered to the trustee under a trust deed to institute foreclosure proceedings as such trustee and not as an attorney for collection, the holders of the notes are not entitled to the attorney's fees mentioned in the notes.

2. NEW TRIAL ⬅⟿73—GROUNDS—CONFLICTING FINDINGS.

Conflicting jury findings on the question whether mortgage notes were delivered to a trustee under a trust deed as an attorney for collection or to institute foreclosure proceedings as trustee, held to require a new trial.

3. GUARANTY ⬅⟿16(3)—CONSIDERATION—NECESSITY.

A written contract guaranteeing payment of an overdue note, held void because without consideration.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Winifred A. Conroy, Nora C. Davenport, and Sam Davenport, her husband, and Mary B. Blankenship, against the Oak Cliff State Bank & Trust Company and M. L. Morris. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Morris & Williamson, of Dallas, for appellants. Short & Feild, of Dallas, for appellees.

TALBOT, J. This suit was filed in the district court of Dallas county, Tex., October 5, 1915, by the appellees Winifred A. Conroy, Nora C. Davenport, and Sam Davenport, her husband, and Mary B. Blankenship, against the appellants, Oak Cliff State Bank & Trust Company and M. L. Morris, alleging that on the 15th day of March, 1912, C. G. Quillian was the owner of lot 15 in block 120, situated in the city and county of Dallas, state of Texas; that on said date the said Quillian, by warranty deed, conveyed to John J. Conroy said lot, in part payment for which the said Conroy gave to the said Quillian his two promissory notes in the sum of $625, each of even date with said deed, due and payable respectively in 12 and 24 months after date, and bearing interest from their date at the rate of 8 per cent. per annum, payable semiannually; that a vendor's lien was expressly reserved in the face of said conveyance to secure the payment of said notes; that on the same date, to wit, March 15, 1912, the said John J. Conroy, in order to further secure the payment of said notes,

executed to M. L. Morris, as trustee, a deed of trust on said property; that said deed of trust provided that in case of default in the payment of said notes the said trustee should advertise and sell said property at the request of the legal owner and holder of said notes at the courthouse door of Dallas county, Tex.; that after the execution and delivery of said notes and said deed of trust, the said Quillian transferred and delivered said notes, with all the securities for the payment of the same to the defendant Oak Cliff State Bank & Trust Company, and that said bank at the time of the institution of this suit was the owner and holder of same; that after the execution of said notes and securities John J. Conroy, in the month of January, 1915, conveyed the said property, subject to the liens stated, to the appellants Winifred A. Conroy, Nora Conroy Davenport, and John T. Conroy, who assumed the payment thereof; that afterwards John T. Conroy and wife by deed dated January 27, 1915, sold and conveyed the interest of the said John T. Conroy in said property to said appellee Winifred A. Conroy, who assumed, in addition to the portion she had already assumed, the payment of the portion of said notes which John T. Conroy had undertaken to pay; that afterwards, on the 4th day of October, 1915, the said Winifred A. Conroy and Nora C. Davenport and husband, by their deed, sold and conveyed to the appellee Mary B. Blankenship the said property warranting the title to the same against the payment of the notes due the appellant Oak Cliff State Bank & Trust Company and all liens and incumbrances. Appellees further alleged that at the time of the last-mentioned conveyance there was due on the two notes held by appellant bank the sum of $1,422.10, being the principal and interest of said notes, and that M. L. Morris, the trustee named in the said deed of trust, had advertised said property for sale; that if the same had been advertised in the manner provided in the deed of trust, the trustee was entitled for his services to reasonable compensation for preparing and posting the notices of sale, which appellees alleged was "about the sum of $15, and not exceeding that sum"; that on the said 4th day of October, 1915, the appellees desiring to pay off the said notes held by the appellant bank tendered to appellants $1,437.10, being the full amount of the principal, interest, and trustee's fees, but appellants refused to accept said sum in full payment of their debt, and that M. L. Morris as trustee having advertised said property for sale was threatening to sell. Appellants prayed, upon the facts alleged, for a writ of injunction restraining the sale of their property and for general and special relief. The writ as prayed for was granted, and the appellants on October 8, 1915, filed answer and a cross-bill. The appellants alleged that the principal, interest, and 10 per cent. attorney's fees due on said two notes of $625

each, and the ownership in said bank, and the renewal and extension agreement, dated February 14, 1914, executed by John J. Conroy to said bank, increasing the rate of interest to 8 per cent., and providing for 10 per cent. attorney's fees, if collected by attorney, or placed in the hands of an attorney for collection or collected by suit, and making said notes due in 6 and 12 months from said date. Appellants also alleged the execution of the deed of trust in usual form providing for 10 per cent. trustee's fee in case of sale by the trustee. Appellants denied that $15 was a reasonable fee to the trustee, and alleged that appellants declined the tender of $1,437.10, because insufficient in amount since the notes were placed in the hands of M. L. Morris as an attorney for collection about August 1, 1915, and in addition to the principal, $1,250, interest to October 5, 1915, $171.80 and 10 per cent. attorney's fee, $142.18, the said John J. Conroy owed said bank another note of $100, dated June 18, 1914, and due in 90 days, with 10 per cent. interest from maturity, $10.80, and 10 per cent. attorney's fees, $11.05, making the total indebtedness $1,682.52, and that the trust deed provided for 10 per cent. trustee's fees, $168.50, a total of $1,854.08, but that appellants had offered in a spirit of compromise, or in the event the court should think it would be a hardship to allow both the attorney's fees and the trustee fee, to waive the trustee's fee; that Winifred A. Conroy and John J. Conroy, by writing, duly executed and dated August 11, 1915, guaranteed the payment of said $100 note, and secured it by lien on said lot 15, block 120, Oak Cliff, and agreeing said note of $100 should be paid out of the proceeds of said lot if sold. Appellants sought judgment and a foreclosure of its liens to secure all said indebtedness, three notes, including principal, interest, and attorney's fees, and prayed for sale of said lot as under execution, and that the temporary restraining order be dissolved.

The appellees by supplemental petition and answer denied all the matters contained in appellants' answer and cross-bill; the appellee Winifred A. Conroy averring specially that she was not liable on the written guaranty which appellants alleged she executed for the payment of her father's debt evidenced by the note of $100 described in appellants' cross-bill, because there was no consideration for said guaranty. The appellee Mary B. Blankenship in said supplemental petition and answer averred that at the time she became the purchaser of the property involved in the suit on the 4th day of October, 1915, she purchased the same in good faith and paid therefor its fair, full, and reasonable value; that she had no knowledge, actual, or constructive, at the time of her purchase of the lien claimed to have been executed thereon by John J. Conroy and Winifred A. Conroy to secure the

payment of the $100 note of said John J. Conroy described in appellants' cross-bill, and that such lien, if any, should not be foreclosed against her property. Appellants, in a supplemental answer, alleged that the transactions between appellees and John J. Conroy by which the latter sold and conveyed all the property he owned to his children were colorable and made to wrong and defraud appellants and defeat them in the recovery on said $100 note and the attorney's fees; that he was insolvent and tried to cover up all his property from his creditors, and that Mary B. Blankenship was related to the family and knew of the $100 note and the lien securing it on said lot, and did not pay value for the property she bought, and that the consideration for the guarantee by Winifred A. Conroy of the $100 note was that John J. Conroy, her father, had conveyed her and his other children the lot herein and all his property subject to execution; that said lot was not the business homestead of John J. Conroy, but was rented, and he being a widower, it was at all times subject to the payment of his debts—having been acquired 2 years after the death of his wife. The case was tried and submitted to a jury on special issues. Plaintiffs and defendants each filed motions for judgment, and the motion of the latter was denied, and that of plaintiffs granted December 28, 1916, and judgment entered for plaintiffs, enjoining the sale of the lot, and canceling the vendor's and deed of trust liens of defendants, and that the sum of money, $1,437.10, tendered and deposited in court by plaintiffs, be paid to defendants, who are ordered to release said liens, and that defendants take nothing against plaintiffs and pay all costs. From this judgment appellants perfected an appeal.

The two vendor's lien notes of $625 each and the $100 note sued on by appellants in their cross-action were executed by John J. Conroy and held by appellants at the time this suit was instituted. Each of said notes provided that in the event it was "placed in the hands of an attorney for collection or collected by suit," the maker thereof would pay 10 per cent. of the principal and interest of said note as attorney's fees, and by appropriate assignments of error appellants complain of the action of the trial court in denying to them a recovery of said attorney's fees embraced in said two vendor's lien notes, and a recovery against appellee Winifred Conroy for the amount of the $100 note, principal, interest, and attorney's fees, with foreclosure against Mary B. Blankenship on the property purchased by her, and in entering judgment canceling said notes and liens, and that appellants be required to accept in full payment of their entire indebtedness the sum of $1,437.10, tendered by appellees. Upon the complaint here made arises the material questions for our consideration and decision on the appeal. The appellants contend, in ef-

fect, that under the undisputed evidence and findings of the jury judgment should have been rendered in their favor for the attorney's fees provided for in the two vendor's lien notes, and for the principal of the $100 note, together with the interest and attorney's fees therein specified. Therefore the tender of $1,437.10 made by appellees was insufficient in amount, and afforded no obstacle to a recovery for the sums claimed in their cross-action or justification for the judgment rendered against them. To appellants' contention in relation to the attorney's fees provided for in the two vendor's lien notes appellees reply that:

"A payee of a note stipulating for the 10 per cent. attorney's fees may not recover attorney's fees where he does not place the note in the hand of an attorney for collection, but only for foreclosure of a trust deed."

[1, 2] If the notes in question were placed in the hands of M. L. Morris, Esq., as trustee of the deed of trust heretofore referred to, with direction that he proceed as such trustee to foreclose the lien created by said trust deed in the manner as therein provided, and not as an attorney for collection within the meaning of the provisions of the notes stipulating for the payment of attorney's fees, then appellants were not and are not entitled to a judgment for such fees in addition to the principal and interest of said notes. But we are unable to conclude from the state of the record that they were so placed in the said Morris' hands. On the other hand, it seems to us that the testimony now before us is practically undisputed that they were delivered to him as the attorney for the appellant bank for collection in the manner his best judgment as such attorney dictated. The jury's findings upon the issue are conflicting. Their answer to the tenth question submitting the issue is: "Foreclosure of deed of trust." In response to the twelfth question propounded at the instance of appellants, wherein they were asked if the appellant Oak Cliff State Bank & Trust Company about August 1, 1915, delivered to M. L. Morris as its attorney the three notes in suit, two for $625 each, and one for $100 for collection to use his discretion as to the remedy to pursue, and as pay for his services to look alone to the contract for attorney's fees provided for in said notes, they answered, "Yes." If appellant bank did not, according to the undisputed testimony, show itself entitled to recover the attorney's fees stipulated in each of the $625 notes to be paid in case said notes were placed in the hands of attorney for collection, its right to have a clear, definite, and unequivocal finding upon the issue cannot be questioned. Such finding, as disclosed by the record before us, was not accorded it, and for that reason, if for no other, we think the learned trial judge erred in not setting the verdict of the jury aside and directing another trial.

[3] Upon the question of appellant's right to recover judgment against appellee Wini-

frٵd Conroy for the amount of the $100 note, including attorney's fees, upon her alleged guaranty, we hold against appellants. It is well settled that the undertaking of a guarantor, if in form of a contract like the one in question, must be supported by a consideration. This consideration, it is said—

"is usually either of benefit to the principal or surety, or of detriment to the creditor; * * * but where the consideration between the principal and creditor has passed and become executed before the contract of the surety or guarantor is made, and such contract was no part of the inducement to the creation of the original debt, such consideration is not sufficient to sustain such contract." Baker v. Wahrmund, 5 Tex. Civ. App. 268, 23 S. W. 1023; Simmang v. Farnsworth, 24 S. W. 541; 1 Brandt, Sur. (2d Ed.) § 17.

Another form of stating the rule is as follows:

"A promise as guarantor or surety to pay an executed contract of indebtedness of a third person, without additional consideration, is not binding." Bluff Springs Mercantile Co. v. White et al., 90 S. W. 710.

The note for the sum of $100 executed and delivered to appellant bank by John J. Conroy was executed June 18, 1914, and was due 90 days after its date. The written guaranty of Winifred Conroy and upon which appellant relies was executed and delivered August 11, 1915, about 11 months after the maturity of the note. The evidence, in our opinion, fails to disclose any such additional consideration as is required under the rule stated to support the contract of guaranty.

The views expressed render it unnecessary to discuss any other assignment of error.

For the reason indicated, the judgment is reversed, and the cause remanded.