MOLYNEAUX et ux. v. AMARILLO IN-
DEPENDENT SCHOOL DIST.*
(No. 2418.)

(Court of Civil Appeals of Texas. Amarillo.
April 29, 1925. Rehearing Denied
Nov. 18, 1925.)

1. Schools and school districts ⬛⟾22—Legisla-
ture enlarging independent school district
held to have acted within authority given by
Constitution.

Legislature, having on petition of residents
enlarged independent school district so as to
embrace land which theretofore had not been
contained therein, *held* to have acted within au-
thority given by Constitution.

2. Schools and school districts ⬛⟾24(2)—Col-
lateral attack on incorporation of school dis-
trict cannot be maintained in defense to suit
for collection of taxes.

In suit to recover school taxes assessed
against lands within independent school dis-
trict, where defendants had sought to put in
issue the fact that lands were illegally added
to district, *held*, that such issue could only be
brought before court by state or under au-
thority from state in manner provided by law,
and such defense to present suit constituted
collateral attack on incorporation of school
district, and could not be maintained.

3. Schools and school districts ⬛⟾41(2)—All
property in district enlarged by act of Leg-
islature must bear share of burden of taxes
levied by voters of district, even though act
enlarging district may have been invalid.

In suit to recover school taxes, which were
voted by electors after enlargement of district
by act of Legislature, *held* that, even though
act enlarging district might not have been valid,
yet, majority having elected to submit to levies
on which taxes sued for were based, all prop-
erty in district must bear its share of burden.

Appeal from District Court, Randall Coun-
ty; Reese Tatum, Judge.

Suit by Amarillo Independent School Dis-
trict against H. B. Molyneaux and wife.
From a judgment for plaintiff, defendants
appeal. Affirmed.

Hugh L. Umphres, of Amarillo, for appel-
lants.

P. F. Sapp and Gee & Underwood, all of
Amarillo, for appellee.

WILLIS, Special Associate Justice. This
suit proceeded to trial on the plaintiff's
amended petition filed in the district court of
Randall county, wherein the Amarillo inde-
pendent school district sought recovery
against H. B. Molyneaux and Mrs. Molyneaux
for certain school taxes assessed against
the Molyneaux lands, alleged to have been
subject to taxation within such school dis-
trict. The petition alleged that taxes upon
the lands owned by the defendants had been
levied, assessed, and reported delinquent for
the years 1918, 1919, 1920, and 1921, and con-
tained a schedule of the properties and an
itemized statement of the taxes, penalties,
interest, and costs. This pleading contains
the customary allegations in suits to enforce
the collection of delinquent taxes on real es-
tate.

The defendants' answer was by general de-
murrer, general denial, and special answer,
alleging that the plaintiff ought not to re-
cover the alleged tax, because the plaintiff
was, on the 2d day of April, 1918, and for
many years prior thereto, a municipal or
quasi municipal, corporation, with powers
conferred by the Constitution authorizing
plaintiff to levy and collect taxes upon all
the property lying within certain boundaries,
not including the land of defendants, and
authorizing said plaintiff to create bonded
indebtedness under the authority of the Con-
stitution and laws of Texas relating to in-
dependent school districts generally, and
prior to said last-named date, the plaintiff
had created, and there was in force as valid,
binding obligations of said Amarillo inde-
pendent school district as then incorporated,
many thousands of dollars of indebtedness
in the nature of bonds lawfully issued and
sold and disposed of by said district and,
while said indebtedness was in full force
and effect, the plaintiff, desiring to extend
its boundaries and to include other land, in-
duced the Legislature to pass an act to in-
clude the land of plaintiff as described in its
petition, and to undertake to bind the land
of defendants for the payment of such pre-
existing debts and obligations of plaintiff, and
the Legislature did pass such an act without
any opportunity ever being given to the prop-
erty taxpaying citizens of such added ter-
ritory to vote upon the question as to wheth-
er such pre-existing bonded indebtedness
would be assumed, and no election was ever
called or held for such purpose, and no vote
was ever taken upon the subject—all of
which was in violation of article 7, section
3, of the Constitution of the state of Texas,
which provides that no tax shall be levied
without the vote of a majority of the tax-
paying property owners, approving same—
and plaintiff was denied such privilege, and
the act of the Legislature undertaking to in-
clude defendants' land within the boundaries
of plaintiff's district, and to bind said land
for the payment of pre-existing bonded in-
debtedness, and authorize taxes to be levied
and assessed and collected from defendants'
land, is wholly void, invalid, and of no force
or effect, and the alleged taxes, interest,
penalties, and costs claimed by plaintiff are
likewise invalid, and of no force or effect,
and invalid as a claim against defendants
or their land. Defendants further alleged
that the pretended claims of plaintiff con-
stituted a cloud upon the title to defendants'
land, which ought to be removed and the

title quieted of such pretended claims. Further defendants alleged that the plaintiff has undertaken to assess, levy, and collect taxes, in part, to pay the bonded indebtedness of the district prior to the act of 1918, and that the tax now claimed by plaintiff is in part for the purpose of paying said pre-existing bonds, and that there is nothing to indicate that the Legislature would have passed such law without making such new district assume such old bonded indebtedness, and the entire law and caption thereto of 1918 showing the law was passed as an entirety and in pursuance of a plan to raise additional funds by adding new territory and shifting its existing indebtedness partially to the added territory.

Trial of the cause before the court without a jury resulted in judgment in favor of the district, decreeing the sum of $1,485, taxes, interest, penalty, and costs as a just and legal demand against defendants' land as assessed and a foreclosure of tax lien on such lands. Appellants have regularly brought such judgment before this court for revision.

The act enlarging the boundaries of the Amarillo independent school district is found in the Local and Special Acts passed at the Fourth Called Session of the Thirty-Fifth Legislature, pages 307–309, amending section 2 of an act passed by the First Called Session of the Thirty-First Legislature (chapter 8, Special Laws). The amendment reads as follows:

"An act to amend section 2 of an act passed by the First Called Session of the Thirty-First Legislature, chapter 8, Special Laws, entitled:

" 'An act to authorize, enable and permit the territory situated within the bounds of the city of Amarillo, in the county of Potter and state of Texas, and other land and territory adjacent thereto in Potter county, to incorporate as an independent school district for free school purposes only, to be known as the Amarillo independent school district, with all the powers, rights and duties of independent school districts formed by incorporations of towns and villages for free school purposes only; and to provide for the election of trustees, raising revenue by taxation, issuing of bonds, acquiring the property of, and assuming the indebtedness of, the Amarillo independent school district, and of the Amarillo independent school district within the city limits, and dissolving the Amarillo independent school district within the city limits, and repealing chapter 136, Acts of 1905, relating to the incorporation of the Amarillo independent school district, and declaring an emergency,' so as to add certain territory in Randall county, and declaring an emergency.

"Be it Enacted by the Legislature of the State of Texas:

"Section 1. That section 2 of the act described in the caption of this act be so amended as to hereafter read as follows:

" 'Section 2. The territory hereby created into said independent school district is hereby described and bounded as follows: Beginning at the northwest corner of section number 22, certificate 1–11, and the southeast corner of section number 48, certificate number 1–24, B. S. & F., Potter county, Texas; thence east with section lines two miles to the west line of section number 222, block no. 2, A. B. & M.; thence north with the west line of said section no. 222, to the northwest corner of said section no. 222; thence east with section lines seven miles to the northeast corner of section no. 102, certificate no. 672, block no. 2, A. B. & M.; thence south with the section lines, five and three-fourths miles, more or less, to the intersection of the east line of section no. 107, certificate no. 675, block no. 2, A. B. & M., with the north line of Randall county; thence west with the county line between Potter and Randall counties one mile, to a point where said county line intersects the east boundary line of section no. 122, block no. 2, A. M. & M.; thence south with section lines, two and one-fourth miles, more or less, to the southeast corner of section no. 120, block 2, A. B. M., Randall county, Texas; thence west with section lines eight miles, to the southwest corner of section no. 29, block no. 9, B. S. & F., in Randall county, Texas; thence north with section lines eight miles to the place of beginning.'

"Section 2. The inhabitants of the territory lying and situated in Randall county, Texas, included in the above-described boundaries, shall hereafter be entitled to all the rights and privileges, and subject to the same liabilities of taxation as the citizens and inhabitants of Potter county, Texas, residing within the territory lying and situated in said Potter county, described in this act and in the act amended herein; and all the property within said limits added to the territory heretofore included within said independent school district shall hereafter be subject to such taxation as may have been, or may hereafter be, provided by said independent school district; and the right and power of said independent school district to levy special taxes provided by law for the maintenance of its schools and the payment of interest on its outstanding bonds and the creation of a sinking fund for the payment of said bonds may be exercised for the current tax year of 1918, on the property in said added territory, as well as upon the property located in the original boundaries of said district; provided, however, that the property situated in said added territory shall not be subject to any district school tax of any district lying and situated in Randall county at the same time.

"Section 3. All obligations of the original Amarillo independent school district as created by the act described in the caption of this act are continued as the obligations of said district as extended in this act; and all taxes or other debts due to said original district are continued in full force and effect for the benefit of the said district as extended in this act; and all property owned by said district as created by said act amended herein shall continue as the property of the said district as herein extended.

"Section 4. The fact that a vast majority of the inhabitants of the territory lying and situated in Randall county, being the territory added to the limits of said district by this act, have petitioned this Legislature to pass an

act including said territory in said Amarillo independent school district and the deplorable condition of the public free schools within the territory herein described, being without adequate means and funds to properly maintain and support said schools, together with the crowded condition of the calendar, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and that this act take effect and be in force from and after its passage; and it is so enacted."

Approved April 2, 1918.

Upon the trial the case was developed by the testimony of Judge Gee and agreement of the parties as to certain facts.

Briefly stated, the uncontroverted facts are that, at the time of the enlargement of the boundaries of the district under the act approved April 2, 1918, the original school district had outstanding bonded indebtedness amounting to $190,000, and the question as to whether the school district as extended would assume the payment of such bonds was never submitted to a vote of the taxpaying citizens of the extended territory, unless the petition referred to in the act of the Legislature constituted a vote; that, since the territory was extended in 1918, the entire district voted for the issuance of and did issue the following bonds: May 1, 1919, $80,000 40-year bonds; July 2, 1920, $20,000 20-year bonds; December 1, 1921, $220,000 40-year serial bonds; that, after its enlargement, the district voted in favor of the levy of the taxes sued for; that no taxes have ever been paid by the defendants within the district as extended; that the bonds that were issued prior to the act of 1918 have been sold to parties other than the district itself, and are outstanding obligations of the district as it was incorporated, prior to the act of 1918; that the land in controversy is owned by appellant; and that the district is asserting a claim and lien for taxes against such land, a part of which is for the purpose of paying the bonded indebtedness of the district as it existed prior to the act of 1918; that, after the enlargement of the district, the entire district authorized in 1918 the levy of a 50-cent tax for the maintenance of the schools of the district; and that in 1921 this maintenance tax was raised to $1.

Appellants upon this appeal are seeking a reversal of the judgment upon their contention that the land in controversy was annexed to the school district by the Legislature, without the owners of such land having an opportunity to vote upon the issue as to whether the indebtedness of the original district would be assumed in violation of article 3, section 7, of the Constitution, and that, therefore, the entire annexation act of the Legislature is invalid and void.

[1] The Legislature acted within the authority given by the Constitution in enlarging the Amarillo independent school district so as to embrace the land against which the taxes are assessed. State v. Brownson, 94 Tex. 436, 61 S. W. 114; Shipley v. Floydada Independent School District (Tex. Com. App.) 250 S. W. 159; Houston et al. v. Gonzales Independent School District (Tex. Civ. App.) 202 S. W. 963; Hill v. Smithville Independent School District (Tex. Com. App.) 251 S. W. 209. We therefore hold that the defendants' lands became a part of the district when the act of 1918 became effective.

The authorities are not in accord upon the proposition as to whether or not the Legislature had the power under the Constitution to impose the burden of pre-existing indebtedness upon inhabitants of the new district which rested upon the taxpayers of the old district.

It is announced by our Supreme Court in the case of Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601, that, where an independent school district had voted a tax of 20 cents for school purposes, and afterwards other territory is annexed to the district, such tax cannot be extended to cover property in the annexed territory without giving the taxpayers therein an opportunity to vote on the question. Similar views are expressed by the court in the cases of Cummins v. Gaston (Tex. Civ. App.) 109 S. W. 476; Hill v. Smithville Independent School District (Tex. Com. App.) 251 S. W. 209. We also find that in the case of Houston et al. v. Gonzales Independent School District (Tex. Civ. App.) 202 S. W. 963, the court reasons to a different conclusion. The court states in this case:

"We find no provision in the Constitution which directly restricts the Legislature from imposing burdens upon inhabitants of the new district which rested upon inhabitants of the old district; but the amendment to section 3 of article 7, which authorizes the imposition of taxes by vote of the taxpayers of school districts, and which is held to be the only grant of power of that nature as to districts other than cities and towns which have assumed control of their schools, restricts the purposes for which taxes may be levied to 'the further maintenance of public free schools and the erection and equipment of school buildings therein.'

"We are unable to deduce from such provision an implied prohibition against placing financial burdens upon a district otherwise than by a vote of the taxpayers thereof. At most, it can only be held to impliedly prohibit the use of funds raised by taxation for purposes other than 'the further maintenance of public free schools and the erection and equipment of school buildings. Now, it may be conceded that the payment of the debt to the city, hereinbefore described, could not be made out of funds raised by local taxation, but the Legislature would doubtless have the power to provide that revenue derived from other sources could be used for such purpose. In the act under consideration the Legislature did not undertake to authorize a tax levy to pay the obligations placed upon the new district, and we are not confronted with a case in which the

use of money derived from local taxes for that purpose is sought to be enjoined. We conclude that the provision making obligations of the Gonzales public schools binding on the new district is not in violation of section 3, art. 7, of the Constitution."

This case is cited as authority for the inclination to similar views in Gerhardt v. Yorktown Independent School District (Tex. Civ. App.) 252 S. W. 197, and the latter case mentions the following cases as supporting the validity of like statutes: Love v. Rockwall School Dist. (Tex. Civ. App.) 194 S. W. 659; Eagle Lake Independent School District v. Hoyo (Tex. Civ. App.) 199 S. W. 352; Eagle Lake v. Lakeside Sugar Refining Co. (Tex. Civ. App.) 144 S. W. 709; Davis v. Payne (Tex. Civ. App.) 179 S. W. 60. We do not attempt to reconcile any conflict there may be in the authorities mentioned, because we are of the opinion that there are other reasons why this judgment should not be disturbed.

From the agreed statement of facts it appears that, since the act of 1918 complained of, the territory added to the school district has been treated and recognized as a part of the municipal corporation, and the voters have balloted at elections therein, fixing the identical tax levies upon which the taxes herein have been computed, and the voters have also authorized the issuance of bonds in the district to the amount of $320,000. Therefore, even if the additional lands acquired by the district under the act of the Legislature were unlawfully added thereto, still they have been recognized as a de facto part of the corporation.

[2] We believe that under this state of facts the appellants are not entitled in this action to defend upon the contention that their lands were illegally added to the district. Such issue could only be brought before the courts by the state in the manner provided by law, or under authority from the state. Such a defense as the one urged by appellants constitutes a collateral attack on the incorporation of the school district, and, in our opinion, cannot be maintained.

In 6 Ruling Case Law, § 91, p. 92, the rule is thus stated:

"In some jurisdictions a different doctrine is adhered to, and no taxpayers' action can be maintained against the auditing or disbursing officers of the state in reference to the enforcement of a law alleged to be unconstitutional. It has been said, that if such relief is sought, it must be in an action by the state itself, either brought by the Attorney General, or, in case of his refusal, by authority of the court itself, on the relation of a private citizen."

This state seems to adhere to this doctrine. In the case of Floydada Independent School District v. Shipley, 238 S. W. 1026, which was a suit instituted to restrain the levying and collecting of taxes, the late Chief Justice Huff of this court announces:

"If the district was illegally constituted, the state alone can take advantage of the fact in a proper proceeding for that purpose. If the Legislature intended that the taking in of the new territory should be by a vote of the electors, yet it is manifest the school district, the trustees, the citizens, as well as appellee, recognized the authority of the district over the new territory, and it was treated as part of the body corporate. It was for all practical purposes treated as a de facto portion of the incorporated district. We think the rule requiring the state alone by a direct proceeding, instituted for that purpose, will apply; that appellee will not be permitted by injunction to restrain the collection of taxes and to assail the incorporation of the school district, in this indirect manner." Harbin Independent School District v. Dennison (Tex. Com. App.) 222 S. W. 538.

The same rule is announced in City of Houston v. Little (Tex. Civ. App.) 244 S. W. 247 (writ of error denied).

Also in the case of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25, it is stated:

"The rule is well established that when the creation of a public corporation, municipal or quasi municipal, is authorized by statute and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding," by a taxpayer defending a tax suit.

In the recent case of Martin v. Grandview Independent School District, 266 S. W. 607, the Court of Civil Appeals at Waco holds that, an enlarged independent school district being a quasi municipal corporation, its legality could only be determined by suit for that purpose by the state or under its authority, and lack of legality could not be asserted as a defense in a suit by the district for taxes.

[3] Again we find from the agreed statement of facts that "no issue is raised as to the district after its enlargement, having voted in favor of the levy of the taxes sued for and the regularity of the assessments and levies, if the act itself be valid"; and "that, after the enlargement of the district, the entire district authorized in 1918 the levy of a 50 cent tax for the maintenance of the schools of the district, and that in 1921 this maintenance tax was raised to $1. Under these agreed facts, we know of no process of reasoning that would lead to any other conclusion than that all of the voters of the district had an opportunity to participate in the elections where these tax levies were voted, and, the majority having elected to submit to the identical levies upon which the taxes sued for are based, all the property in the district must bear its share of the burden.

The electorate fixed the imposts; the taxes sued for are not in excess of those established by the electors; and accordingly the school district should prevail for these reasons, if we are in error as to any other matters contained in this opinion.

The judgment of the trial court is affirmed.

## On Rehearing.

The appellants complain in their motion for rehearing that we erred in holding that the Legislature, by the general law quoted in the opinion of this court, could enact a law making the land of appellants liable for the payment of pre-existing bonded indebtedness of the school district without making the law effective only upon the contingency of an election being held to determine whether the citizens and inhabitants and electors of the added territory, or of the whole district, would assume such liability.

We did not so hold in the original opinion rendered in this cause, but, after discussing this question, we announced that we found some conflict in the authorities in this state upon this issue, but that it was unnecessary for us to reconcile them in order to render what we believe to be a proper judgment in this cause.

The appellants in this case are attempting to resist the payment of taxes on their land because they say the legislative act incorporating their land in the school district is unconstitutional. Since the filing of the motion for rehearing herein, we have given the subject-matter of this suit further study, and feel convinced that our holding in the original opinion to the effect that the validity of attempted annexation of contiguous territory to an independent school district cannot be collaterally attacked at the suit of a private citizen defending against the payment of taxes is correct. The state can make such inquiry and attack the validity of a quasi municipal corporation by proper proceedings instituted by it or under its authority, and we do not believe that the appellants are entitled to assail the incorporation of the Amarillo independent school district in so far as the annexed territory is concerned in the indirect manner attempted in this suit. Harris v. City of Port Arthur (Tex. Civ. App.) 267 S. W. 349; Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742; Parker v. Harris County (Tex. Civ. App.) 148 S. W. 351.

The motion for rehearing is overruled.

FIRES, Special Associate Justice, concurs.
MARTIN, Special Chief Justice, not sitting.